2014 VT 60

## In re Howard Center Renovation Permit
## (South Burlington School District, Appellant)

[99 A.3d 1013]

No. 13-463

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed June 13, 2014

*Pietro J. Lynn* and *Sean M. Toohey* of *Lynn, Lynn & Blackman, P.C.*, Burlington, for Appellant.

*Franklin L. Kochman* of *F.L. Kochman, Inc.*, Burlington, for Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Amicus Curiae Howard-Center, Inc.

*Arline P. Duffy* and *Eric S. Miller* of *Sheehey Furlong & Behm P.C.*, Burlington, for Amicus Curiae Vermont Council of Developmental and Mental Health Services, Inc.

*William H. Sorrell*, Attorney General, Montpelier, and *Bessie Weiss*, Assistant Attorney General, Burlington, for Amicus Curiae Vermont Department of Health.

¶ 1. **Skoglund, J.** South Burlington School District (District) appeals from an environmental court decision approving Howard Center, Inc.'s application for interior renovations to an existing medical office to accommodate a new methadone clinic. The District contends the court erroneously concluded that: (1) the clinic was a permitted "medical office" use under the South Burlington Land Development Regulations and therefore did not require site-plan or conditional-use review; (2) the Traffic Overlay provisions of the Regulations did not apply to the permit application; and (3) general safety concerns were not a permissible consideration under the Regulations in reviewing the permit application. We affirm.

¶ 2. The material facts are not in dispute. For a number of years, Howard Center has operated two out-patient clinics that provide medically supervised methadone and buprenorphine maintenance treatment for those with opioid dependence: one, which has operated since 2002, is located at the University Health Center (UHC) on South Prospect Street in Burlington, and the other, since 2011, at the office of the former Twin Oaks Counseling Service in South Burlington.

¶ 3. As part of a plan to relocate the Twin Oaks office and reduce the patient load at the UHC office, Howard Center entered into a lease for about 10,000 square feet of office space in an existing medical office on Dorset Street in South Burlington, and the following month submitted a building-permit application for interior renovation of the office space. The office is situated within one of several buildings on a 2.2-acre parcel and is part of a multi-unit, multi-use development originally approved by the City as a Planned Unit Development (PUD). The property lies within the City's Central District 2 (CD 2) zoning district, in which "Office, Medical" is a permitted use. Land Development Regulations (2012) (Regulations), app. C. The Regulations define the latter as "[a]ny establishment where human patients are examined and treated by doctors, dentists or other medical professionals but not hospitalized overnight." Regulations § 2.02.

¶ 4. As the trial court found, Howard Center plans to use the renovated office for "the medication assisted treatment of patients suffering from opioid dependence. As part of this treatment, physicians and nurses will perform medical examinations and administer methadone or buprenorphine to the patients." A patient must be diagnosed with opioid addiction to receive treatment,

which also entails mandatory individual and group counseling. The treatment of substance-abuse disorders in Vermont, the court noted, generally follows a "whole-patient approach," involving "the use of medication, in combination with counseling and behavioral therapies." Clinic staff will thus include several nurses and lab technicians, at least ten substance-abuse clinicians, case managers, and a consulting psychiatrist and psychologist — all under the direction of a licensed physician serving as the clinic's medical director.

¶ 5. The City's zoning administrator granted the renovation permit, finding that site-plan review was not required under the Regulations because the proposal was solely for interior renovations of a permitted medical-office use and did not involve any "new use, change in use, or expansion of use" under the Regulations. Regulations §§ 14.03.A(1), 14.03.B(5). In response, the District — which administers a middle school and high school located approximately 500 and 1000 feet respectively from the proposed clinic — appealed the permit approval to the South Burlington Design Review Board (DRB). The District questioned whether the methadone clinic qualified as a permitted use, but the DRB found that it "will involve . . . the examination and treatment of patients" and therefore involved no change of use from "office, medical." The District also argued that the clinic was located within the City's Traffic Overlay District (TOD) and therefore a traffic analysis was required prior to permit approval. The DRB found that the property was not located within the TOD, and that — even if it were — an analysis was not warranted absent a change of use. Finally, as to the District's claim that the zoning administrator was remiss in failing to inquire generally "into the safety of the proposed use," the DRB found that there was no such requirement in the Regulations. Accordingly, the DRB denied the appeal.

¶ 6. The District thereupon appealed to the environmental court, claiming that the clinic represented a "change of use" requiring site-plan and conditional-use review under the Regulations, that it required a traffic-impact analysis under the TOD regulations, and that "safety concerns relative to traffic, impaired driving, and crime" arising from the clinic's location were necessary and proper

considerations under the Regulations.[1] The parties filed cross-motions for summary judgment, and the trial court issued a written ruling in November 2013, in favor of Howard Center.

¶ 7. As to the "change of use" issue, the court rejected the District's claim that the methadone clinic constituted a modification or additional use as a provider of "social services," defined under the Regulations as an "[e]stablishment[] providing assistance and aid to those persons requiring counseling for psychological problems, employment, learning disabilities, and/or physical disabilities."[2] The court found, in this regard, that the purpose of the clinic was to provide "medication assisted treatment of patients suffering from opioid dependence," that to this end "physicians and nurses will perform medical examinations and administer methadone or buprenorphine to patients," and that the counseling provided by the clinic was "an essential part of the overall treatment of patients' opioid dependence" under the direction of a physician. The court thus concluded that the use of the facility remained that of "office, medical" within the meaning of the Regulations as an establishment where "patients are examined and treated by doctors, dentists or other medical professionals," and therefore no conditional-use or site-plan review was required.

¶ 8. The court further concluded that, regardless of whether the clinic was physically within the Traffic Overlay District, the traffic regulations were not triggered by a permit seeking only interior renovations with no change of use or PUD amendment. Finally, the court found no basis under the Regulations for undertaking the safety analysis urged by the District. Accordingly, the court entered judgment in favor of Howard Center on its permit application. This appeal followed.[3]

---

[1] A "change of use" under the City's land development regulations is defined as "[t]he modification of a use of a building or land, or the replacement of a use of a building or land with another use or uses, or the addition of a use or uses to a building or land, or the cessation of a use or uses of a building or land." Regulations § 2.02.

[2] "Social services" is a conditional rather than a permitted use within the CD-2 district where the clinic is located. Regulations, app. C. Conditional-use review is required prior to issuance of a zoning permit for uses listed as conditional. Regulations § 14.10.C.

[3] In addition to the briefs of the parties, amicus curiae briefs in support of appellee Howard Center were filed by the Vermont Department of Health, the Office of the Defender General, and the Vermont Council of Development and Mental Health

¶ 9. ■ The District contends the trial court erred in concluding that the planned methadone clinic constitutes a permitted "medical office" use requiring no conditional-use or site-plan review under the Regulations. Our paramount goal in construing a zoning ordinance, like any statute, "is to give effect to the legislative intent." *In re Bjerke Zoning Permit Denial*, 2014 VT 13, ¶ 22, 195 Vt. 586, 93 A.3d 82 (quotation omitted). "Thus, we construe an ordinance's words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." *In re Laberge Moto-Cross Track*, 2011 VT 1, ¶ 8, 189 Vt. 578, 15 A.3d 590 (mem.) (quotation omitted).

¶ 10. Because a "majority" of the staff at the clinic will provide mandatory substance-abuse and other behavioral counseling, the District maintains that it meets the definition of "social services" as an establishment providing "counseling for psychological problems," and therefore represents a new or additional use requiring conditional-use and site-plan review. The record evidence was clear and uncontroverted that the counseling therapies provided by the clinic are part of a patient's overall treatment plan, which generally entails a threshold medical diagnosis of opioid dependence, initial assessment and physical examination by medical staff, daily administration of methadone or buprenorphine administered by nursing staff, periodic testing to calibrate proper dosage, detect side effects, and monitor compliance, and coordination of care with other medical providers in the community — all under the supervision of an on-site physician.

¶ 11. ■ ■ In light of this evidence, we agree with the trial court that the clinic does not constitute a "social services" establishment — instead of or even in addition to a "medical office" — merely because treatment includes a counseling component. Mental health counseling is an integral component of many medical specialties and practices providing integrated health-care services, and the record is devoid of any evidence of the City's intent to compel conditional-use or site-plan review under the

Services, Inc. The Council's brief focuses on whether denial of Howard Center's application would violate provisions of the Americans with Disabilities Act and the Rehabilitation Act of 1973, issues we need not consider in view of our decision affirming issuance of the permit. The briefs of the State and the Defender General emphasize the critical need for additional methadone treatment facilities in Vermont, a need which all parties here — including appellant — have acknowledged but which, again, did not factor into our analysis or decision.

"social services" rubric for each and every medical office that integrates patient counseling. See *In re Lashins*, 174 Vt. 467, 469, 807 A.2d 420, 423 (2002) (mem.) (observing that we prefer a "construction that implements the ordinance's legislative purpose, and, in any event, will apply common sense" to the construction) (quotation omitted)).[4]

¶ 12. To be sure, a substance-abuse or other free-standing clinic engaged in counseling without the extensive on-site medical personnel and treatment protocols provided by the Howard Center clinic might present a different question. As other courts in similar circumstances have concluded, however, the comprehensive methadone treatment provided by the clinic at issue *here* plainly constitutes a permitted medical-office use within the district, and did not require site-plan or conditional-use review under the Regulations. See, e.g., *Village of Maywood v. Health, Inc.*, 433 N.E.2d 951, 953, 955 (Ill. App. Ct. 1982) (holding that methadone clinic combining methadone maintenance, detoxification, and individual and group therapy services by staff of doctors, nurses and counselors constituted permitted office use by "health practitioners"); *Discovery House, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty.*, 701 N.E.2d 577, 578-80 (Ind. Ct. App. 1998) (holding that proposed methadone-treatment clinic — whose in-house staff included physicians, nurses, and pharmacists and which provided medical examinations, laboratory analyses, and individual and group counseling under medical supervision — constituted permitted medical out-patient facility under zoning regulations); *THW Group, LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 337 (Pa. Commw. Ct. 2014) (rejecting neighbors' claim that proposed methadone clinic failed to qualify as permitted "medical office" use based on trial court finding that clinic provides "treatment of patients" by staff of doctors, nurses, and counselors within meaning of zoning ordinance). Accordingly, we find no basis to disturb the trial court's ruling.

---

[4] On the integration of physical and mental health care services, see, e.g., J. Cassidy, et al., *Behavioral Health Care Integration in Obstetrics and Gynecology*, Medscape General Medicine (2003) (noting the increasing need for "inclusion and integration of services that identify, treat, and medically manage behavioral health issues in the practice of obstetrics and gynecology"); D. Walcott, et al., *Supportive Oncology: New Models for the Role of Psychiatry in Cancer Care*, 11 Focus No. 4 (Oct. 1, 2013) (surveying the variety of new organizational models for providing integrated supportive behavioral-health services for cancer patients).

¶ 13. The District also argues that the trial court erred in concluding that, absent a change of use, Howard Center's application for interior renovations did not trigger the need for a new traffic-study analysis under the TOD section of the Regulations.[5] The argument fails. As the trial court observed, although the TOD section contains no express statement of how a traffic review is triggered, guidance may be found in "the purpose of the TOD and its traffic review factors." The TOD provision states, in this regard, that it seeks "to provide a means by which the allowable uses [within the Traffic Overlay District] . . . may be regulated . . . based on traffic generated and impacts on City access management goals." Regulations § 10.02.A. The section provides that traffic generated by a use shall "not exceed the maximum allowable traffic generation," or "traffic budget," which is "calculated by multiplying the size of the lot by the maximum traffic generation rate." Regulations § 10.02.F(1). Guidelines set forth in the Regulations for estimating the allowable traffic generation counsel the use of· a "primary measurement," such as "for office buildings the floor area" or other "easily verifiable [factor] . . . related to the land use type, not to the characteristics of the tenant/operator." Regulations, app. B, § B.2.

¶ 14. ▮ As the trial court explained, the TOD's reliance on "primary" measurements and express disregard for the "characteristics of the tenant/operator" in determining allowable traffic rates support the conclusion that an application for interior renovations designed to accommodate a new tenant with the same permitted use — without any change in lot size or "land use type" — does not trigger a new traffic analysis under the TOD. The trial court's construction is supported by the language of the provision as a whole, and we thus find no basis to disturb it. See *In re Champlain Coll. Maple St. Dormitory*, 2009 VT 55, ¶ 13, 186 Vt. 313, 980 A.2d 273 ("On review, we will uphold the Environmental Court's construction of an ordinance unless it is clearly erroneous, arbitrary or capricious." (quotation omitted)).

¶ 15. ▮ The District lastly contends the trial court erred in concluding that a review of the District's safety concerns arising from ·the proximity of the clinic to its middle and high schools was

---

[5] As originally approved and subsequently amended, the large commercial PUD in which the clinic is located was subjected to both parking and traffic review and analysis under the Regulations governing PUDs. Regulations §§ 14.05, 15.05, 15.08.

not authorized under the Regulations. The contention is unpersuasive. The City's authority was confined to the express provisions in the Regulations, strictly construed in favor of the landowner, with any ambiguity resolved in the landowner's favor. *In re Toor*, 2012 VT 63, ¶ 9, 192 Vt. 259, 59 A.3d 722; see also 24 V.S.A. § 4448(a) (providing that municipality's zoning officers must "administer the bylaws literally"). Here, as the trial court correctly noted, the Regulations contain no provision of any kind authorizing a broader review of an application for interior renovation otherwise exempt from conditional-use, site-plan, and TOD approval.

¶ 16. The District also relies on the Regulations' introductory "purpose" statement, to the effect that the goal of the Regulations is "to promote the health, safety, and general welfare of the community." Regulations § 1.01. We reject the argument, as that section does not even purport to establish an enforceable standard for evaluating zoning permits of this nature, much less a standard which provides adequate notice to property owners and guidance to municipal decisionmakers. See *In re JAM Golf, LLC*, 2008 VT 110, ¶ 13, 185 Vt. 201, 969 A.2d 47 (holding that zoning ordinance must specify sufficient standards "to guide applicants and decisionmakers," and will not be enforced where it fails to do so and thereby leaves "unbridled discretion" to administrators and courts charged with its interpretation). The line of California cases cited by the District is equally unpersuasive, as they concern a constitutional provision specifically vesting that state's department of alcoholic beverage control with the authority to deny, suspend or revoke any liquor license if it " 'determine[s] for good cause that the . . . continuance of such license would be contrary to public welfare or morals.' " *Kirby v. Alcoholic Beverage Control Appeals Bd.*, 498 P.2d 1105, 1107 (Cal. 1972) (quoting Cal. Const., art. 20, § 22)). No such provision is at issue here. Accordingly, we find no basis to disturb the trial court judgment.

*Affirmed.*