NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 123

No. 2014-434

| In re Bove Demolition/Construction Application (Richard J. Bove, Sr. and Rick Bove, Appellants) | Supreme Court |
|---|---|
| | On Appeal from Superior Court, Environmental Division |
| | April Term, 2015 |

Thomas G. Walsh, J.

Christina A. Jensen of Lisman Leckerling, P.C., Burlington, for Appellants.

Kimberlee J. Sturtevant, Assistant City Attorney, Burlington, for Appellee.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.  **SKOGLUND, J.**  Applicants, Richard J. Bove, Sr. and Rick Bove, applied to the City of Burlington Development Review Board (DRB) to construct a development on their two adjacent lots.  A zoning-district-boundary line runs through the middle of the proposed development, dividing the two parcels.  The city's zoning ordinance requires a fifteen-foot setback intended to be a buffer between the two districts—one downtown and the other residential.  The DRB denied the application, and applicants appealed to the Environmental Division.  The Environmental Division concluded that, although the merger of the two adjacent lots eliminated the property line dividing the two parcels, the merger did not eliminate the fifteen-foot buffer required by the zoning ordinance. Thus, any new structure in the downtown

district parcel could not encroach on the setback bordering the residential district parcel. The decision of the Environmental Division comes to us on interlocutory appeal.  We affirm.

¶ 2.    The following facts are undisputed.  Applicants own two lots on George Street, one located directly north of the other.  The southern lot is located entirely in the Downtown Transition Zoning District (DT district); the northern lot is located completely in the Residential High Density Zoning District (RH district).  The property line separating the two lots is thus also the boundary line between the DT and RH districts.  Applicants propose to merge these two lots, thereby eliminating the existing property line, remove several existing buildings located on the two lots, and construct a single development consisting of twenty-three residential units and one commercial unit.  The development would face eastward on George Street, its width running north-south across both lots, bisected by the east-west DT-RH boundary line.  The northernmost edge of the building as proposed would be less than fifteen feet from the residential lot immediately to the north of applicants' two lots.

¶ 3.    Following the DRB's denial of their application, applicants appealed to the Environmental Division.  They moved for partial summary judgment, asking that court to decide the following question: If the two parcels of land owned by applicants are merged into a single lot, thereby eliminating the property line separating the former parcels, does the Burlington Comprehensive Development Ordinance require that improvements built thereon comply with the setback requirements from a zoning district line?  The zoning-district-line setback at issue here is City of Burlington Comprehensive Development Ordinance § 4.4.1(d)(6) (2012) [hereinafter CDO].  That provision states that, in the DT district, "[s]tructures shall be setback a minimum of 15-feet from any property line that abuts a residential zoning district."[1]  CDO § 4.4.1(d)(6).

---

[1]    The provision also refers to a list of exceptions that apply to "yard setback requirements" generally, but none is relevant here.  CDO § 4.4.1(d)(6) (citing id. § 5.2.5(b)).

¶ 4.     Before the Environmental Division, applicants argued that upon merger of the two parcels, the fifteen-foot setback would not be required between the northern edge of the new structure and the northern property line.  Applicants reasoned that no provision of the CDO required a zoning-boundary-line setback to exist in the absence of a property line between a lot located in the DT district and a lot located in an adjacent residential district.  Therefore, they posited, they needed to comply only with the sideyard setback based on lot width in the RH District, which would result in a 5.14-foot setback.[2]

¶ 5.     The City argued that the setback requirement of CDO § 4.4.1(d)(6) applied regardless of whether the DT-RH boundary line was also a property line.  The City claimed that, in situations similar to this one, it had required the developer to formally request that the zoning-district line be redrawn to reflect the change in the property line.[3]  Absent such an amendment, the City contended, a developer must comply with the fifteen-foot setback from the district boundary line, even if that setback would run through the middle of the merged parcel.

¶ 6.     The Environmental Division interpreted CDO § 4.4.1(d)(6) differently than either party.  It held that "the proposed structure does not have to be setback from the existing boundary line between the DT and the RH zoning districts if the property line is removed through merger of the parcels."  It concluded, however, that although the merger of the two lots

_____

[2]  The sideyard setback generally applicable to RH properties is 10% of the lot width but no less than five feet.  CDO Table 4.4.5-3.  Assuming arguendo that the DT portion of applicants' lot would be subject to DT-specific restrictions and the RH portion would be subject to RH-specific restrictions, the 51.4-foot-wide RH portion of applicants' lot would need a 5.14-foot setback from its northern edge.

[3]  In its summary-judgment memorandum below, the City listed several instances in which its "staff" interacted with developers who were seeking to build on or at district boundaries; the end result in each instance was that the developer requested and was granted an adjustment to the district line.  While applicants in this case have not requested that the district line be redrawn, the City cites no requirement in the CDO that applicants make such a request.  In any event, the City has not raised those interactions in the form of an argument on appeal.  We will not consider them.  See State v. Eldert, 2015 VT 87, ¶ 21, n.6, ___ Vt. ___, ___ A.3d ___ ("We will not consider arguments not adequately raised and briefed.").

eliminated the current property line dividing the two parcels, the merger did not eliminate the setback, because the intent of the drafters of the zoning ordinance was to provide a transitional buffer between downtown zoning districts and adjacent residential districts. Thus, "any new structures in the downtown districts must be at least 15 feet from the shared property line with a parcel in a residential district."

¶ 7. Applicants sought leave for an interlocutory appeal, and the environmental division ultimately certified the following question to this Court for review:

> Whether the Environmental Court erred by ruling as a matter of law that a to-be-built structure on a new parcel resulting from merger of a parcel in the DT zoning district with a parcel in the RH district must comply with the [DT-RH] zoning district setback along the new parcel's northern property line (located in the RH district), unless otherwise exempted.

¶ 8. This Court defers to the Environmental Division's "interpretation of a zoning ordinance unless it is clearly erroneous, arbitrary, or capricious." In re Wesco, Inc., 2006 VT 52, ¶ 7, 180 Vt. 520, 904 A.2d 1145 (mem.) (quotation omitted); In re Weeks, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). We construe zoning ordinances strictly in favor of landowners, In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578, 15 A.3d 590 (mem.), but our "principal objective" in interpreting statutory or ordinance language is to implement the intent of its drafters. Baker v. State, 170 Vt. 194, 198, 744 A.2d 864, 868 (1999). In doing so, we adhere to familiar principles of statutory interpretation. In re Weeks, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). We thus turn first to the plain language of the bylaw at issue. Id. But we recognize that "[zoning] regulations cannot be considered to be entirely exhaustive, given the breadth of novel land-development possibilities a municipal body may face." Laberge Moto-Cross, 2011 VT 1, ¶ 14. Thus, if applying the plain language is impossible, would undermine the purpose of the statute, or would produce absurd results, then we examine "the broad subject matter of the statute, its effects and consequences, and the purpose and spirit of the law to determine

4

legislative intent." Town of Killington v. State, 172 Vt. 182, 189, 776 A.2d 395, 401 (2001); see also In re Margaret Susan P., 169 Vt. 252, 262, 733 A.2d 38, 46 (1999).

¶ 9.    As the Environmental Division recognized, the City's interpretation of CDO § 4.4.1(d)(6) ignores the plain language of the provision and common sense. The provision dictates the distance a structure must stand "from any property line." Moreover, the CDO defines "setback" as "[t]he open, unobstructed area required to be provided between the furthermost projection of a building and the adjacent property line." CDO Art. 13: Definitions, at 13-39 (emphasis added). The setback requirement of § 4.4.1(d)(6) therefore does not apply absent a property line. Indeed, it would be strange to apply a setback in the middle of a property, as the City would do here.

¶ 10.    We agree with the City and the Environmental Division, however, that applicants' interpretation of the setback provision—to allow them to unilaterally eliminate the buffer between the City's residential zoning districts and the downtown zoning districts through the merger of two parcels—would undermine the intent of the drafters of the CDO. The CDO describes the purpose of the DT district as "provid[ing] a balance and continuity in the character and scale of development . . . between the Downtown and the nearby residential district," and functioning as a "gateway[]" or "transition" between those districts. CDO § 4.4.1(a)(2). Structures in the DT district require minimal or zero setback and may cover 100% of the lot, id. Table 4.4.1-1, but structures in the RH district require setbacks in the range of five to seventy-five feet and may cover only up to 80% of the lot. Id. Table 4.4.5-3. Therefore, the purpose of the fifteen-foot "Residential District Setback" in § 4.4.1(d)(6) logically must be to provide a buffer between the denser downtown development and the less-dense residential communities. The Environmental Division's interpretation of this district-boundary setback—that it should apply at the new northern border of applicants' merged parcel, rather than along the former property line that divided the merged parcels—provides the buffer intended by the CDO drafters.

5

¶ 11.    The Environmental Division's interpretation here is reinforced by our decision in In re All Metals Recycling, Inc., wherein we confronted a similar multi-parcel setback issue. 2014 VT 101, ¶ 13 ___ Vt. ___, 107 A.3d 895.  In that case, a business that leased multiple adjacent parcels applied to the local development board for a discretionary permit to continue operating a previously unpermitted scrap metal plant, using space on all of the adjacent parcels. Neighbors challenging the permit application contended, among other things, that the business's proposal violated setback and buffer requirements of the zoning ordinance.

¶ 12.    The bylaws of the applicable zoning district required that each property have setbacks, which could include landscaped buffers, on all sides.  The bylaws stated that setbacks and buffers are "ordinarily measured" from "the property . . . line."  Id. ¶ 23.  While the neighbors argued that the business was required to have setbacks around each adjacent parcel in the set of parcels that contained the business's operation, we disagreed.  We implicitly acknowledged that the language "ordinarily measured" meant that setbacks generally would be measured from deeded property lines, but we interpreted the wording as "leav[ing] room for situations just like the present one, in which a business leases multiple parcels and uses space on each for its operations."  Id. ¶ 24.  We considered the stated purpose of the ordinance's setback/buffer provisions, which included " 'ensur[ing] land use compatibility by requiring effective landscaped buffers between potentially incompatible uses,' "  id. ¶ 24 (alteration in original), and we ultimately interpreted "property line" to mean "the outer boundary of a property dedicated to a single use or under common legal control," rather than property lines reflected on fee simple deeds.  Id. ¶ 25 & n.5.

¶ 13.    The Environmental Division's decision in this case similarly rejects an interpretation that would apply a setback to an illogical location in favor of an interpretation that respects both the plain language and stated purpose of the setback provision.  Just as the setback buffers in All Metals Recycling were "ordinarily" measured from deeded property lines, the City

6

points out that the boundary lines of the DT district "generally" follow property lines. But we know from other CDO provisions that lots split by a zoning district boundary exist and are accommodated in various ways. See, e.g., CDO §§ 5.2.3(a)(1), 5.2.7(a)(1). Moreover, if district lines always followed property lines, the reference in the setback provision to property lines would be superfluous. The provision would simply state that structures must be setback "from any residential zoning district line," rather than "from any property line that abuts a residential zoning district." See CDO § 4.4.1(d)(6). We assume that the drafters intended each word of the setback provision to have meaning; we avoid construing language of an ordinance as mere surplusage. See In re Lunde, 166 Vt. 167, 171, 688 A.2d 1312, 1315 (1997). Thus, while this case requires application of the setback provision in an unusual situation, the drafters' language "leaves room for situations just like the present one, in which [developers own] multiple parcels and use[] space on each for [their] operations." All Metals Recycling, 2014 VT 101, ¶ 24.

¶ 14. The drafters' intent is subject to yet further debate. Both parties claim that changes made or not made during the 2008 redrafting of the CDO support their respective interpretation of the DT-RH setback provision. Applicants and the City both note that the drafters amended provisions of the CDO regarding split lots with respect to calculating density and lot coverage, but not setback requirements. Applicants imply that the drafters' failure to address district-boundary setbacks specifically with respect to split lots indicates their intent that the setback requirements not apply in split lots. The City argues, on the other hand, that this omission means the drafters intended the setback provisions to apply to split lots, even where the zoning district boundary line bisects a parcel.

¶ 15. The City also points to the deletion of a particular provision as further proof that setback provisions are intended to apply to split lots. During the 2008 amendments, the drafters removed a provision that listed several rules for interpreting district boundaries where "uncertainty exists as to the boundaries of any district." Two of those former rules applied to

7

split lots and dictated that, with a couple of exceptions, that the split-lot owner should have the benefit of the more-permissive district's restrictions. The City suggests that, by removing this provision while also adding other rules specifically for split lots, the drafters clarified that split lots are granted no special allowances, except for lot coverage and density, so zoning district boundary setbacks must apply at boundary lines regardless of whether they follow property lines.

¶ 16.    The arguments of both parties fail because they rely on what they seek to prove. Applicants' premise assumes that the ordinance as written completely excludes split lots from the district-boundary setback, while the City's argument assumes that the ordinance's current language strictly applies the setback at the zoning-district-boundary line and that only a specific exception could change its location. The fact is the CDO drafters have never specifically addressed the particular legal conundrum presented here. Nor would we necessarily expect them to. See All Metals Recycling, 2014 VT 101, ¶ 13 ("We have recognized that zoning regulations cannot be considered to be entirely exhaustive, given the breadth of novel land-development possibilities a municipal body may face." (quoting Laberge Moto-Cross, 2011 VT 1, ¶ 14)). The drafters' failure to address this particular situation does not indicate their position on it; instead, we are left with other tools of statutory interpretation to discern their intent from the language of the ordinance currently in effect. We have applied those tools and find no clear error in the Environmental Division's interpretation of the ordinance.

¶ 17.    Finally, the City expresses concern about expansion of our holding. It argues that affirming the Environmental Division's decision would allow developers to buy up a row of lots—one in the DT district and the rest extending into the RH district—and thereby unilaterally shift the DT-RH setback buffer far past its intended location. Contrary to the City's concern, our decision does not necessitate that the DT-RH setback in such a case be shifted to the edge of the new parcel farthest from the original DT-RH line. While we hold that the Environmental Division's interpretation of the zoning provision in this case was a correct understanding of the

8

law and effectuated the legislative intent, our opinion does not purport to predict the outcome of all future cases addressing the scope of the same provision. For example, if a hypothetical application of this setback were to create a seemingly absurd result, we would be tasked with applying the same statutory analysis we have utilized here to determine whether the legislative intent of the statute had been honored or ignored. See, supra, ¶ 8. In this case of a two-lot merger, it was not clearly erroneous to interpret the district-boundary setback to apply at the property's border with the next RH-district property in light of the plain language and purpose of the setback provision.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 18. **ROBINSON, J., dissenting.** The portion of applicants' land that is located within the residential high density (RH) zoning district is subject to all of the requirements of the RH district with respect to, among other things, building height, dimensional standards, and density. Yet the majority holds that the tract is subject to a more onerous setback requirement on its northern boundary than any other property in the City of Burlington located in the RH district. The rationale underlying the majority's analysis does not support its conclusion, and its ruling undermines important zoning policies, is untethered from the letter and goals of the applicable zoning ordinances, and leads to unpredictable outcomes. For these reasons, I respectfully dissent.

¶ 19. I note at the outset that I fully agree with the majority's rejection of the City's argument that the ordinance requires a setback within applicants' merged lot, between the portion located in the downtown transition (DT) district and the portion in the RH district. Ante,

9

¶¶ 5-9. That position does not jibe with the language and purpose of the ordinance, and makes little sense for the reasons identified by the majority. But I cannot join the conclusion that because the setback called for in the applicable ordinance does not apply here, a new setback between two properties within the RH district is required.

¶ 20. The majority reasons that "the purpose of the fifteen-foot 'Residential District Setback' in [City of Burlington Comprehensive Development Ordinance § 4.4.1(d)(6) (2012) [hereinafter CDO]] logically must be to provide a buffer between the denser downtown development and the less-dense residential communities." Ante, ¶ 10.

¶ 21. If the merger of applicants' lots meant that the RH portion of applicants' lot was now subject to the zoning requirements of the DT district with respect to matters such as building heights, dimensional standards, and density, then the majority's reasoning would make a lot of sense. Consistent with the City's zoning ordinances, the neighbor to the north of applicants' newly-merged lot should not suddenly find itself pressed up against a DT-district-compliant structure without some sort of buffer.

¶ 22. But the RH portion of applicants' lot is not subject to the requirements of the DT district by virtue of the merger of applicants' lots. In 2008, the City amended its ordinances to eliminate rules providing that a split-lot owner gets the benefit of the more permissive district's restrictions with respect to the entire lot if more than fifty percent of the land area of the parcel lies within the less-restrictive zone. There is nothing in the revised ordinance that suggests that properties straddling district lines are exempt from the requirements applicable in each respective district regarding the property in that district. Nor is there any support for the notion that the creation of a split lot effects a relocation of the district boundary. The district boundaries are to be interpreted with reference to the property lines or other applicable references as they existed at the time of passage of the ordinance, CDO § 4.1.4, and the ordinance clearly provides that district boundaries can only be amended by the administrative officer in accordance with actions

10

of the city council.  Id. § 4.1.3.  For these reasons, the portion of applicants' lot previously located in the RH district is still located in the RH district, and is still subject to the RH districtzoning requirements.  As applicants acknowledge, to the extent that their proposed structure sits on the portion of their lot that lies within the RH district, it must comply with the RH district zoning requirements.

¶ 23.  Because the RH portion of applicants' lot is subject to the RH district zoning requirements, the notion that a buffer is required to insulate the neighbor to the north in the RH district from the denser downtown development of the DT district[4] does not make sense. Because the neighbor to the north adjoins property that is within the RH district, and is subject to the residential-district zoning requirements of that district, there is no greater need for a buffer between applicants' property and the neighbor to the north than between any other two properties within the RH district.  The majority's rationale does not support its conclusion.

¶ 24.  Moreover, the majority's approach undermines an important policy goal of the ordinance—to provide uniform requirements for structures within each district.  The ordinance specifically identifies among its purposes, "[p]roviding uniform provisions for each class of uses or structures within each district" and "[r]equiring that every parcel of land and every structure in the city . . . be subject to the regulations, restrictions, and requirements specified for the district in which it is located."  CDO § 4.0(b), (c).  Yet, as noted above, the majority's approach singles out one area within the RH district—the northern portion of applicants' merged lot—and applies a setback requirement that is more restrictive of the property owner's ability to develop that

---

[4]  The ordinance provides that the RH district "is intended primarily for high density attached multi-family residential development.  Development is intended to be intense with high lot coverage, large buildings, and buildings placed close together.  Parking is intended to be hidden either behind or underneath structures."  CDO § 4.4.5(a)(5).  The DT district is intended to serve as a gateway and a transition between the Downtown district—the primary urban center of Burlington—and the nearby residential district.  My analysis does not turn on this fact, but it's important to note the contrast between the character of these two districts in terms of the primary factor cited by the majority—density—is modest.

11

property than the requirements applicable to any other property within the RH district. And it subjects applicants' property to more onerous rules than any other property in the RH district without an overriding rationale that advances other goals of the ordinance. This approach is not consistent with the stated purposes of the zoning ordinance. See In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 13, 190 Vt. 132, 27 A.3d 1071 ("We examine not only the plain language of a zoning ordinance, but also the whole of the ordinance . . . in order to try to give effect to every part, and will adopt an interpretation that implements the legislative purpose . . . The legislative intent is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences." (quotation omitted)).

¶ 25. If the plain language of the ordinance supported the majority's approach, I might be persuaded. See In re Howard Ctr. Renovation Permit, 2014 VT 60, ¶ 9, 196 Vt. 542, 99 A.3d 1013 ("Our paramount goal in construing a zoning ordinance, like any statute, is to give effect to the legislative intent. Thus, we construe an ordinance's words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." (quotations omitted)). But the notion that the ordinance requires a fifteen-foot setback between land situated in the RH district and another property in that district is untethered from the ordinance. The ordinance applicable to property within the DT district provides: "Structures shall be setback a minimum of 15-feet from any property line that abuts a residential zoning district." CDO § 4.4.1(d)(6). The majority's approach applies this restriction to property that is located in the RH district, and requires a setback from a property line that does not "abut" a residential zoning district, but rather is fully within it. Absent compelling evidence that our construction is consistent with the intent of an ordinance, we should not stray this far from its plain language.

¶ 26. Underlying the majority's analysis seems to be the sense that the ordinance contemplates an unbroken "buffer" between the boundaries of the DT and RH districts, enforced

by a fifteen-foot undeveloped swath of land.  If this buffer is not required smack down the middle of applicants' merged lot, it must be required somewhere, and the boundary between applicants' lot and the neighbor to the north seems like the most appropriate place to put it.  But the sense that there has to be a fifteen-foot swath somewhere reflects an assumption that is not supported by the language and purposes of the ordinance, nor by the record.  Having rightly concluded that, by its plain terms and consistent with its intent, the setback ordinance does not require a fifteen-foot swath down the middle of applicants' merged lot, the majority did not have to search for another place to require a fifteen-foot buffer.  Because the property in the RH district that would have benefited from the buffer was merged with the property in the DT district on which the buffer would have been required, the goals of the buffer are satisfied.  It does not  need to be relocated somewhere else.

¶ 27.   And the logic of the majority's approach is not entirely clear.  Why not relocate the buffer to the south end of the merged parcel, so that a fifteen-foot buffer was required between the adjoining property within the DT district to the south, and the portion of applicants' merged lot that was within the DT district?[5]  If applicants acquire the lot immediately north of the merged lots, and merge that lot into the existing ones, does the floating fifteen-foot undeveloped swath move to the next lot north?  Does it keep floating as more lots are merged?  The majority asserts that its holding is limited to the facts of this case, but its rationale offers no clear framework for answering these questions.

¶ 28.   For these reasons, I dissent.  I would hold that all of the requirements of the RH district, including setback requirements, apply to the portion of applicants' lot within that district, all of the requirements of the DT district apply to the portion of applicants' lot within that

---

[5]  I realize that in this case the southern portion of the merged lot is bounded on the south by Pearl Street.  My point is that the logic of the majority's approach—looking for a different place to situate a fifteen-foot buffer when a newly merged lot straddles the DT and RH districts—could as easily lead to relocating the "buffer" to the other end of an affected property.

district, and the residential district setback applicable in the DT district does not by its own terms or goals apply in this case.

 

 

_____

Associate Justice