STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 127-10-17 Vtec |

| | |
|---|---|
| JSCL, LLC CU Permit | DECISION ON MOTION |

This is an appeal of a September 6, 2017 decision by the Town of Ferrisburgh Zoning Board of Adjustment ("ZBA") approving a conditional use permit in Ferrisburgh, Vermont. Appellants David Pierson, Jane Melrose, Aubrey Choquette, and Kenneth Villeneuve (collectively "Appellants"), represented by Liam L. Murphy, Esq., now move for summary judgment. JSCL, LLC ("JSCL"), applicant and cross-appellant represented by Anthony R. Duprey, Esq., opposes the motion.[1] The Town of Ferrisburgh ("the Town"), represented by Kevin L. Kite, Esq., also opposes the motion.

**Standard of Review**

We are directed to grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). When considering a motion for summary judgment, we give the nonmoving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. Once the moving party meets the initial burden of showing no material facts are disputed, the burden shifts to the non-moving party to establish a triable issue of fact. Pierce v. Riggs, 149 Vt. 136, 138 (1987). In order to establish that a fact is disputed or unsupported by the record, the non-moving party must cite to materials on the record or show that the materials cited by the moving party do not establish the absence of a genuine dispute. V.R.C.P. 56(c).

---

[1] In its memorandum in opposition to Appellants' summary judgment motion, JSCL also requests that the Court, "to the extent appropriate, grant summary judgment in favor of JSCL pursuant to V.R.C.P 56(f)." See JSCL Memorandum in Opposition, filed on Feb. 26, 2018, at 2. We address this request below, although our review is as brief as the support for summary judgment provided by JSCL.

**Undisputed Facts**

The following facts are based on the record now before us and are set out solely to rule on the pending summary judgment motion.

1.     JSCL owns a nine-acre +/- parcel of land on the north side of Tuppers Crossing in the Town of Ferrisburgh, Vermont (the "Property").

2.     On November 15, 2016, JSCL filed a conditional use permit application for a proposed use on the Property described in the application as "8,000 SF commercial building to serve for trucking business with 1 full-time, 6 part-time employees and an outdoor truck-wash area."  The application identifies the use as "commercial," and the zoning district as "industrial."

3.     The application includes a site plan indicating that the proposed use will be in the "commercial / industrial" zoning district.  The site plan also includes the following note: "parking calculation: 2,200 SF commercial floor area = 1SP/200 SF = 11 parking spaces, 1 accessible parking space, 9 truck parking spaces."

4.     The Town of Ferrisburgh Zoning Board of Adjustment ("ZBA") approved the application on September 6, 2017, issuing a written decision on that approval on September 13, 2017.

5.     The approval authorizes the construction and operation of a trucking facility for a fuel truck hauling business with outdoor gravel-surface parking for nine fuel tanker trucks, 11 paved standard size parking spaces, an 8,000+ square-foot maintenance and repair garage with offices, an outside truck and tanker washing facility, and an above-ground fuel tank for refueling the engine fuel tanks on the trucks.

6.     The December 7, 2016 Ferrisburgh ZBA minutes indicate that the above-ground fuel tank would be 4,000 gallons.

7.     The application is subject to the Town of Ferrisburgh Land Use Regulations, Amended November 2, 2010 ("the Regulations").

8.     The Ferrisburgh Town Plan 2017-2025 (the "Plan") was approved by the Ferrisburgh Planning Commission on March 15, 2017 and adopted by the Selectboard on August 15, 2017.

**Conclusions of Law**

Appellants move for summary judgment on Questions 2, 3, 5, and 6.  Questions 5 and 6 ask whether the proposed use complies with the Regulations' parking requirements, or, if not,

whether those requirements can be waived. Questions 2 and 3 ask whether the proposed use complies with the Regulations' conditional use provisions, including conforming with the purpose of the zoning district in which it would be located.[2]

## I.   Whether the proposed use complies with parking requirements.

Appellants challenge the parking associated with the proposed use through the following questions:

> Question 5: Without limiting Question 1 does the Proposed Fuel Trucking Terminal comply with the Parking requirements of Article VI of the Bylaws?

> Question 6: Without limiting Question 1 would the Proposed Fuel Trucking Terminal be entitled to a waiver of the parking requirements under Section 10.7 which provides "the AMP may grant applicants waivers to zoning district dimensional standards" under certain conditions in light of the fact that parking is not a "dimensional standard".

The Regulations provide that:

> For every building hereafter erected, altered, extended or changed in use, there shall be provided off-street parking spaces at least as set forth below

> . . .

> Commercial, Business and Unspecified Uses: One parking space for every motor vehicle used in business, plus every two hundred square feet of floor area.

Regulations § 6.2.F.[3]

We interpret zoning ordinances to give effect to their drafters' intent. In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 20, (Dec. 8, 2017) (citing In re Howard Ctr. Renovation Permit, 2014 VT 60, ¶ 9, 196 Vt. 542). We do this by construing an ordinance's words "according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (quoting In re Laberge Moto–Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (mem.)). Our construction is "generally bound by the plain meaning of the words in the ordinance, unless the express language leads to an irrational result." In re Pierce Subdivision Application, 2008 VT 100, ¶ 8, 184 Vt. 365 (citations omitted).

---

[2] The Town's brief in opposition addresses Questions 5 and 6, but not Questions 2 or 3.

[3] Other uses categorized under § 6.2 include residential use; motor lodge, tourist home; residential health care facility; community center; and professional office. The use proposed here would not fall into any of these categories.

The use of the word "shall" in § 6.2.F indicates that these parking requirements are mandatory. In re B & M Realty, LLC, 2016 VT 114, ¶ 35, 203 Vt. 438. JSCL's proposal includes nine parking spots for nine tanker trucks, which complies with the first part of Regulations § 6.2.F by providing "[o]ne parking space for every motor vehicle used in business."

The second part of Regulations § 6.2.F calls for "[o]ne parking space for . . . every two hundred square feet of floor area." The Regulations define "floor area" as the "[s]um of the gross horizontal area of the floors of a building, excluding basement floor areas, unless said basement floor area is counted as a story under definition of 'basement'. All dimensions shall be exterior." Regulations § 2.2.

The proposed use here includes an 8,000 square-foot building, but the site plan explains that parking space calculations are based on "2,200 SF commercial floor area." JSCL argues that only 2,200 square feet of building space will be for "office/commercial" use, and that the rest of the structure will be used for truck storage and vehicle repair and maintenance. We are not aware of anything in the Regulations allowing fewer parking requirements based on how different parts of a structure will be used, and JSCL does not argue that any part of the structure will not serve a commercial use.

Appellants argue that Regulations § 6.2.F requires the proposed use to include 40 parking spaces for the 8,000 square-foot building in order to meet the one space per 200 square foot requirement. The Town agrees with this basic reading of § 6.2.F.[4]

This reading, however, leads to something of an absurd result. The record now before us includes limited information regarding the actual anticipated parking needs for the proposed

---

[4] The Town further argues, however, that the requirements of § 6.2.F can be modified under by the following:

> In permitting a conditional use, the Zoning Board may impose, **in addition to the standards expressly specified by this Bylaw**, other conditions found necessary to protect the best interests of the surrounding property, the neighborhood or the town as a whole.

Regulations § 9.5.B (emphasis added).

As highlighted above, § 9.5.B specifically states that conditions can be added "in addition to the standards expressly specified" elsewhere in the Regulations. Based on the plain language of this phrase, we disagree with the Town that conditions can be used to eliminate requirements set out elsewhere in the Regulations. In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 22, 199 Vt. 19 (explaining that we enforce the plain language of zoning regulations if its terms are unambiguous). Further, allowing the ZBA to eliminate what would otherwise be required through use of this provision would unlawfully grant "standardless discretion to" the ZBA. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586 (quoting In re JAM Golf, LLC, 2008 VT 110, ¶ 17, 185 Vt. 201.

facility. Construing the facts in favor of the nonmoving party, we can assume that a maximum of seven employees will be at the facility at any given time. The facility will be closed to the public, and there is no evidence that anyone else will enter the facility and require parking. Even assuming that all employees are present and each drive their own vehicle, the eleven parking spaces that JSCL proposes will be more than sufficient to meet the actual demand for parking.

To require 40 parking spaces would therefore essentially be the same as requiring approximately 30 parking spaces that will never be used for parking. Such a requirement would entirely divorce the purpose of parking spaces—to park vehicles—from their actual use. See Regulations § 1.2 (defining "parking space" as "Off-street space used for the temporary location of one licensed motor vehicle, such space being at least nine feet wide and twenty-two feet long, not including access driveway, and having direct access to a street."). Construing the facts in a light most favorable to the nonmoving party, the only practical effect of the 30 vacant parking spaces would be to increase impervious surface area and associated stormwater runoff, which would go against one of the purposes of the Regulations, to "[p]rotect soils, water, wetlands, forests, wildlife and other natural resources." Regulations § 1.2. Construing the one parking space per 200 square feet of floor space requirement to include all space would therefore be irrational and would fail to "giv[e] effect to the whole and every part of the ordinance." Confluence Behavioral, 2017 VT 112, ¶ 20 (citation omitted).[5]

It is more reasonable to construe this parking requirement with some consideration of how that floor space is to be used, as the Supreme Court did in In re Dunnett, 172 Vt. 196, 201 (2001). In that case, the Court affirmed the Environmental Court's construction of "one parking space for every two hundred (200) square feet of floor area" requirement to apply only to retail floor area, and not to the floor area of structures that would not draw any vehicle traffic. Id.

Based on this construction of the Regulations, we do not reach Question 6 (whether parking requirements can be waived). Appellants' motion for summary judgment on Questions

---

[5] Appellants appear to acknowledge, to some extent, the absurdity that a rigid construction of the ordinance would lead to when applied to the use proposed here, stating in a footnote to their motion: "It should be noted that Appellants would not necessarily support the implementation of 40 parking spaces were they to be incorporated into the Project, however, given such spaces are plainly required by the parking requirements, Applicant must provide them." Mot. Summ. J. at 3 n.1.

5 and 6 is therefore **DENIED**. Because the appropriate number of parking spaces remains unclear, we also decline to rule on these questions pursuant to V.R.C.P. 56(f).

We note here that the Town presents an additional argument related to Questions 5 and 6 that is not supported by the facts on the record now before us.

The Town asserts that the Ferrisburgh Conservation Committee has recommended that the Project's impervious surfaces—including parking spots—be minimized to reduce potential impacts to a stream that runs through the property. The Regulations specifically provide for such advice to be given. Regulations 10.2.B ("Advisory Committees and Commissions. AMP's may call upon advisory committees or commissions, such as the Ferrisburgh Conservation Commission, to provide advice on applications and other assistance with their duties as provided in 24 V.S.A. §4464(d)"). On the motion before us, however, there is no evidence on the record to support this assertion. Whether the proposed use complies with conditional use provisions.

## II. Whether the proposed use complies with conditional use provisions.

Appellants also challenge the proposed use's conformity with the conditional use provisions via the following questions:

> Question 2: Without limiting Question 1, does the Proposed Fuel Trucking Terminal comply with the Conditional Use provisions and standards of Section 9.5 of the Bylaws?

> Question 3: Without limiting Question 2, does the Proposed Fuel Trucking Terminal fit within "the stated purpose of the district in which the proposed use is to be located" as required by Section 9.5 of the Bylaws in light of the fact that the purpose of the district is for "limited growth of new light industry" and that the bylaws define "freight or trucking terminals" as "Heavy Manufacturing or Industry"?

In their motion, Appellants argue that the proposed use qualifies as "Heavy Industry" under the Regulations, and as such is incompatible with the Town Plan and the stated purpose of the Industrial District in the Regulations.

The Regulations provide for review of proposed conditional uses as follows:

> In any district, a conditional use may be permitted . . . only upon . . . determination that the proposed use will conform to the standards specified in these bylaws. The Zoning Board shall review the proposed use for compliance with all applicable standards as contained in these regulations. This review shall specifically include

consideration of the stated purpose of the district in which the proposed use is to be located. . . .

A.    General Standards: The Zoning Board shall determine that the proposed use will not adversely affect:

. . .

2. The character of area affected.

. . .

4. The Town Plan and bylaws in effect.

Regulations § 9.5.

Our review of what impact the proposed use may have upon the Town Plan leads us to an initial question of whether the current Town Plan governs the proposed use. Courts in Vermont have long applied the minority rule to determine when permit applications vest in relation to the applicability of municipal ordinances and plans. B & M Realty, 2016 VT 114, ¶ 22. Under that rule, an application vests in the laws and regulations that are in effect at the time a proper and complete application is filed. Id. Here, JSCL submitted its application on November 15, 2016. The Town Plan was approved by the Ferrisburgh Planning Commission on March 15, 2017 and adopted by the Selectboard on August 15, 2017. Construing the facts in favor of JSCL to assume that the application is "proper," we must conclude for the purposes of this motion that the application vested before the Town Plan went into effect. Under Regulations § 9.5.A.4 and our vested rights law, the application therefore need not comply with this version of the Town Plan.

The Zoning Regulations describe the purpose of the Industrial District is as follows:

It is the policy of this district to provide an area for limited growth of new light industry and the continuation of the present industrial uses. Industrial use should be subject to review to protect residential amenities. They should be located with easy access to highway and rail services. The size of the industrial uses should be restricted to protect the residential character in adjoining districts. It is recommended that access to all land areas be limited in number to promote safety and to ease traffic flow on public roads. A minimum lot size of two (2) acres is required for these areas.

Regulations 4.5.A.

Appellants argue that the proposed use qualifies as "heavy manufacturing or industry," thereby failing to conform to the call for "limited growth of new light industry and the continuation of the present industrial uses."

The Regulations include the following definitions:

HEAVY MANUFACTURING OR INDUSTRY:

The processing, assembly, distribution, or packaging of natural or man-made products where such activity results in substantial off-site impacts or all such activity and storage of raw or finished products is not enclosed inside a building or screened from the abutting properties and public rights-of-way. Such uses include, but are not limited to, the following: paper, pulp, or lumber mills; freight or trucking terminals; contractor's yards; concrete, asphalt, or brick plants; quarries; bulk fuel storage of over 550 gallons; slaughter houses, rendering, hide tanning; manufacturing or processing of fertilizer, bone, rubber, ammonia, chlorine, petroleum products, gas or explosives, and other similar uses.

LIGHT MANUFACTURING OR INDUSTRY:

The processing, assembly, distribution, or packaging of natural or man-made products where such activity results in no substantial off-site impacts and all such activity and storage of raw or finished products is enclosed in a building or is screened from the abutting properties and public rights-of-way. Such uses include but are not limited to the following: blacksmith's shop or foundry; cabinetry or woodworking shop; electronics or high-tech manufacturing or assembly; machine shop; monument or stone works; sewing; printing; warehousing; wholesale trade; diesel engine, truck, tractor, or heavy equipment storage, sales, or repair; research and testing laboratory; and other similar uses.

Regulations § 2.2.

Appellants' motion highlights sections of the Heavy Manufacturing Use definition, suggesting that the highlighted sections apply to the project.

One of these highlighted sections that defines a heavy manufacturing or industry use is "bulk fuel storage of over 550 gallons." Appellants point to meeting minutes from the DRB decision as evidence that JSCL intends to install a 4,000-gallon fuel tank.

In this de novo appeal we sit in the place of the municipal panel and review the application anew. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h). We hear evidence anew and render factual findings anew "as though no decision had previously been rendered." In re Poole, 136 Vt. 242, 245 (1978). The minutes cited by Appellants are a record of evidence presented to the DRB, but not yet presented to this Court. We therefore do not consider the information contained in those

8

minutes in this de novo appeal. The Site Plan attached to JSCL's conditional use application shows an "above ground fuel tank with secondary containment fueling area," but does not indicate the size of the tank. From the record before us, we cannot conclude that the proposed use is a heavy manufacturing use based on bulk fuel storage over 550 gallons.

Another highlighted section is "petroleum products, gas or explosives." It is unclear how this applies to the proposed use. We note, however, that this clause more completely reads: "manufacturing or processing of . . . petroleum products, gas or explosives." There is no suggestion that the proposed use will involve manufacturing or processing of petroleum products, gas or explosives.

Finally, the definition of heavy manufacturing or industry includes "freight or trucking terminals." The proposed use arguably qualifies as a freight or trucking terminal, which is defined as "[t]he buildings, facilities, and parking areas used for the loading, dispatching and storage of freight, freight vehicles, including but not limited to trains, buses and trucks." Regulations § 2.2. At the same time, "[f]reight and trucking terminal" is listed as a conditional use for the Industrial district. Regulations § 4.5.C.9.

One way to resolve an apparent conflict between zoning provisions is to "hold the specific provision as an exception to the general." In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 31, 199 Vt. 19 (citing Smith v. Desautels, 2008 VT 17, ¶ 17, 183 Vt. 255). The Lathrop court faced a situation similar to that presented here. In that case, zoning regulations permitted sand and gravel extraction as a conditional use in all districts. Id. ¶ 13. The regulations also defined sand and gravel extraction as "quarrying," defined "quarrying" as a type of "heavy manufacturing or industry," and in certain districts either barred "heavy manufacturing" or did not include it as a permitted use. Id. ¶¶ 14–17. The Court held that the specific provision expressly allowing sand and gravel extraction should be read as an exception to the general prohibition on heavy manufacturing. Id. ¶ 31.

The same analysis may apply here. Although heavy manufacturing as a general matter is not contemplated as a use in the Industrial district, this does not prohibit freight and trucking terminals, which are specifically listed as a conditional use for the district. Regulations § 4.5.C.9.

On the record now before us, we are unable to conclude that the proposed use is incompatible with the Town Plan and the stated purpose of the Industrial District, as defined by the Regulations because it qualifies as heavy manufacturing or industry. Appellants' motion for judgment on Questions 2 and 3 is therefore **DENIED**. The facts are also not sufficiently clear for the Court to grant summary judgment pursuant to Rule 56(f).

**Conclusion**

For the reasons set out above, the motion for summary judgment and JSCL's request for summary judgment pursuant to Rule 56(f) are **DENIED**. The Court staff shall set this matter for a telephonic status conference, so that the Court and the parties may review what needs to be accomplished to prepare for trial.

Electronically signed on June 20, 2018 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division